UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>REYNEA LUCERO,<br><br>Defendant. | CR 26-50043-11<br><br>GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT LUCERO'S MOTION TO SUPPRESS |

Comes now the United States of America through its attorneys, Ronald A. Parsons, Jr., United States Attorney, and Benjamin Patterson, Assistant United States Attorney, to file its opposition to defendant Reynea Lucero's motion to suppress spontaneous statements she made to a Drug Enforcement Administration ("DEA") Special Agent and a Task Force Officer with the South Dakota Unified Narcotics Enforcement Team ("UNET") without ever being asked a question by the agents during her transport to the Pennington County Jail on April 27, 2026, following her initial appearance.[1] Docket 201.

**Factual Background**

The defendant was arrested on April 25, 2026, by a South Dakota Highway Patrol Trooper on a federal arrest warrant and booked into the Lawrence County Jail. On April 27, 2026, DEA Agent Mark Muscha and Rapid City Police Detective Brandon Johnson, a Task Force Officer with UNET, transported the defendant

[1] The statements were recorded and an audio recording will be provided to the Court in its entirety as Exhibit 1.

from the Lawrence County Jail to the Federal Courthouse in Rapid City for her initial appearance on a federal indictment charging conspiracy to distribute a controlled substance. Before transporting the defendant, Agent Muscha told her he was a DEA Agent and that he and Detective Johnson were there to transport her to the Federal Courthouse for her initial appearance.

On the afternoon of April 27, 2026, the defendant appeared before United States Magistrate Judge Mark Haigh for her initial appearance. During that initial appearance, Magistrate Judge Haigh reviewed the defendant's right to remain silent, cautioned her about speaking with law enforcement, and informed her that if she made statements, they could later be used against her. The defendant indicated she understood these rights. The defendant was remanded to custody following her initial appearance. Agent Muscha and Detective Johnson were present for the defendant's initial appearance.

Following her initial appearance, Agent Muscha and Detective Johnson transported the defendant from the Federal Courthouse to the Pennington County Jail. Agent Muscha was the driver, the defendant was seated in the front passenger seat, and Detective Johnson seated in the rear passenger seat. Agent Muscha informed the defendant that she would be transported to the Pennington County Jail and would be processed by the United States Marshals Service at a later date.

At no time during the transport did Agent Muscha or Detective Johnson ask a single question of the defendant, nor did they make any statements to her or to each other about the defendant's case, the facts of her case, or anything

related to any other indicted defendant in her case. During the transport, the defendant spontaneously and voluntarily began speaking of her case, making several incriminating statements. None of these statements were in response to a question or any other statement posed by law enforcement and the only response Agent Muscha gave to the defendant was that she should talk to her attorney and could not use her vape. The agents did not respond to the defendant when she asked them questions about her case. As the defendant began making statements, Agent Muscha activated his recorder to record the defendant's statements. The transport took approximately four and a half minutes.

The defendant, in her motion, claims that Agent Muscha "deliberately" chose to accompany the Marshals transport and the defendant to the jail. Docket 201 at pp. 1, 4. This is an inaccurate statement. Agent Muscha and Detective Johnson were the transport team instructed to transport the defendant to the jail. They did not choose to accompany any Marshals transport.

## Discussion

### A. Fifth Amendment

The Fifth Amendment requires "that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). *Miranda* warnings are required before questioning whenever two conditions are present: (1) the suspect is being

interrogated, and (2) the suspect is in custody. *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007).

The procedural safeguards of *Miranda* are not automatically required when a suspect is simply in custody. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Instead, the safeguards are required "where a suspect is subject to interrogation." *Id.* "Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself." *Id.* Interrogation refers to express questioning or its functional equivalent "that the police should know [is] reasonably likely to elicit an incriminating response from the suspect." *Id.* at 300-01. "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *United States v. Hayes,* 120 F.3d 739, 744 (8th Cir. 1997). Indeed, the Eighth circuit has "repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred . . . and is admissible with or without the giving of *Miranda* warnings.'" *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998) (quoting *Innis*, 446 U.S. at 299).

In this case, Agent Muscha and Detective Johnon were transporting the defendant to the Pennington County Jail. While the defendant was certainly in custody, there was no interrogation taking place. No questions were asked of the defendant, and the agents did not engage her or each other in case-related discussion. In fact, the only conversation the agents engaged in was related to a key card that gave them access to the booking area of the Pennington County

Jail. Rather, Agent Muscha simply activated his recorder while the defendant was making spontaneous and incriminating statements.[2] These statements were not the result of questions or comments initiated by the officers. *See Hayes*, 120 F.3d at 744.

Several Courts have held that spontaneous statements made while a defendant is being transported are not subject to suppression. In *United States v. Brown*, a defendant was being transported by law enforcement to a detention facility. *Brown*, 2013 WL 7711454, *4 (D. Minn. 2013). During the course of the transport, the defendant made spontaneous statements that were not the result of questioning by the officers. *Id.* at *1-2. The defendant moved to suppress the statements. *Id.* The Court denied the motion, finding the "spontaneous statement [fell] outside the dictates of *Miranda*." *Id.* at 4; *see also United States v. Brown*, 2014 WL 760427 (D. Minn 2014) (adopting the Report and Recommendation related to this finding).

In *United States v. Sanchez*, a defendant moved to suppress statements he made following his arrest while he was being transported to jail. *Sanchez*, 2014 WL 1607544 (D. Minn. 2014). In *Sanchez*, the Court noted that "interrogation" included express questioning from police officers or words or actions likely to elicit an incriminating response. *Id.* at 3. The District Court, in denying the motion to suppress, found the statements "were not the product of police

[2] The defendant notes that she was not told she was being recorded. However, were these statements to simply have been memorialized in a report, the defendant is likely to complain that they were not recorded. Additionally, the defendant herself is recorded saying, "I don't even give a fuck if you're recording me or not right now, I can give two fucks." Exhibit 1 at 1:24-1:27.

interrogation" and were therefore "not subject to suppression" because the officers had asked no questions and were merely transporting the defendant when the statements were made. *Id.* at 3.

In yet another case, *United States v. Bedeau*, the defendant moved to suppress statements made during her transport to a local jail facility. *Bedeau*, 2007 WL 4287680, *7 (D. Minn. 2007). The Court, in denying the motion to suppress, noted "the statements the Defendant made during her transport were unsolicited, were spontaneous, and were not in response to any interrogation, or the functional equivalent of interrogation." *Id.*

In *United States v. Fleck,* the Eighth Circuit held that even where a transporting officer engages in some discussion of the pending charges, that discussion might not rise to the level of "the functional equivalent of interrogation." *Fleck*, 413 F.3d 883 (8th Cir. 2005), In *Fleck,* the defendants sought to suppress statements made in the presence of an ATF agent who was transporting the defendants from the jail in Nebraska into federal custody. *Id.* at 889. During transport, the defendants asked the agent what crime they were charged with, and the agent answered that they were charged with being felons in possession of a firearm. *Id.* The defendants responded by making incriminating statements about the firearms in question. *Id.* The Eighth Circuit held that the defendants' statements were not the product of interrogation but were volunteered. *Id.*

In the present case, the behavior by Agent Muscha and Detective Johnson was even more innocuous than that at issue in *Fleck*. The recording

uncontrovertibly demonstrates that neither Agent Muscha nor Detective Johnson engaged in any conversation with the defendant and did not respond to her statements or questions other than telling her she should talk to her attorney and that she was not permitted to use her vape. The fact the defendant was in custody and being transported for the short ride to the jail can hardly be considered an environment that was likely to elicit incriminating statements from the defendant. *See Innis*, 446 U.S. at 300 ("Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself.").

The defendant's motion to suppress her spontaneous and voluntary statements should be denied.

**B. Sixth Amendment**

"[T]he Sixth Amendment guarantees the right to counsel 'at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected.'" *Scott v. United States*, 473 F.3d 1262, 1264 (8th Cir. 2007) (quoting *Mempa v. Rhay*, 389 U.S. 128, 134 (1967)); *see also Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004) ("The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process."). Once criminal proceedings have commenced against a defendant, "the Sixth Amendment forbids *all* efforts to elicit information from him in the absence of counsel, regardless of whether he is in custody." *Wyrick v. Fields*, 459 U.S. 42, 54 (1982) (emphasis in original).

"[T]he test for determining whether a particular proceeding is itself a critical stage is 'whether the presence of ... counsel is necessary to preserve the

defendant's basic right to a fair trial ...” *United States v. Blum,* 65 F.3d 1436, 1441 (8th Cir.1995) (*quoting United States v. Wade,* 388 U.S. 218, 227 (1967)). “Absent an attempt to question [a] defendant . . . there [is] no Sixth Amendment violation.” *United States v. Flute*, 2008 WL 649139, *2 (D.S.D. 2008).

“In *Massiah v. United States*, 377 U.S. 201 (1964), the Supreme Court recognized that a defendant is denied the basic protections of the Sixth Amendment ‘when there [is] used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of counsel.’” *Moore v. United States*, 178 F.3d 994, 999 (8th Cir. 1999) (quoting *Massiah*, 377 U.S. at 206). “*Messiah*, does not prohibit introduction of spontaneous statements that are not elicited by governmental action.” *United States v. Henry*, 447 U.S. 264, 276 (1980) (J. Powell concurring) (noting “the Sixth Amendment is not violated when a passive listening device collects, but does not induce, incriminating comments”); *see also Brewer v. Williams*, 430 U.S. 387, 400 (1977) (no Sixth Amendment violation for recorded conversations where defendant made incriminating statements when there was no interrogation, either formally or surreptitiously, by the government).

The Eighth Circuit has held that to prevail, a defendant bears the burden of proving their right to counsel has attached, and that a government agent “deliberately elicited incriminating statements” from the defendant. *Moore*, 178 F.3d at 999.

The defendant claims that what can be "gleaned" from "[t]he circumstances reveal that the government 'deliberately and designedly set out to elicit' information from the accused." Docket 201 at 5. However, the defendant cites no facts to support this claim. Rather she claims that Agent Muscha chose to accompany a Marshals transport (an untrue fact) and that Agent Muscha activated a recording device. Docket 201 at 4-5. The defendant's claims are without merit, which is clearly shown given the defendant's statements were recorded. There is no evidence to suggest that either Agent Muscha or Detective Johnson made any effort at all to elicit statements from the defendant.

Additionally, the defendant clearly knew who Agent Muscha and Detective Johnson were.[3] Agent Muscha had informed the defendant he was with DEA when he picked the defendant up for her initial transport from the Lawrence County Jail to the Federal Courthouse for her initial appearance. It was the very same officers that transported her to the Pennington County Jail following her initial appearance, where she was informed of her right to remain silent and the possible consequences of making any statements to law enforcement.

The cases cited by the defendant are inapposite to the facts here because the agents were not engaged in any conversation with the defendant at all. Docket 201 at 4 (citing *Fellers v. United States*, 540 U.S. 519, 524-525 (2004)

---

[3] Although the facts clearly indicate the defendant knew she was being transported by law enforcement, the defendant cites no authority outlining the requirement that a defendant know the individuals transporting her or that they give her any explanation of their involvement in the investigation. Additionally, given she was being transported to a jail in custody, it is hard to believe she would not have known it was law enforcement doing the transporting.

(statements made by a defendant during a conversation with law enforcement before being advised of his rights)); *Brewer v. Williams*, 430 U.S. 387, 392-94 (1987) (statements made by a defendant after an officer made a case-related statement to the defendant that was likely and, in fact, did elicit a response from the defendant). The defendant has not shown, nor can she, that Agent Muscha or Detective Johnson engaged in any sort of conduct or efforts to elicit statements from her. Nor can it be said that transporting a defendant from the Federal Courthouse to the Pennington County Jail is a critical stage of the criminal proceedings. *See Blum*, 65 F.3d at 1441 ("[T]he test for determining whether a particular proceeding is itself a critical stage is 'whether the presence of ... counsel is necessary to preserve the defendant's basic right to a fair trial ...").

What is clear and not in dispute in this case is that neither Agent Muscha nor Detective Johnson made any effort to question or engage in any conversation with the defendant during her transport to the jail. "Absent an attempt to question [a] defendant . . . there [is] no Sixth Amendment violation." *Flute*, 2008 WL 649139, *2 (D.S.D. 2008). Nor was the brief drive to the jail an environment that was likely to elicit incriminating statements. *Id.* The defendant voluntarily and spontaneously made statements, and those statements are admissible against her.

**Conclusion**

The defendant's statements were made spontaneously and voluntarily and were not the result of any interrogation by the officers nor an environment likely to elicit an incriminating response. The defendant's statements were not

deliberately elicited by any government action and her motion to suppress should be denied in its entirety.

Dated this 25th day of June, 2026.

RONALD A. PARSONS, JR.
United States Attorney

/s/ *Benjamin Patterson*
Benjamin Patterson
Assistant United States Attorney
515 9th Street, Room 201
Rapid City, South Dakota 57701
Telephone: (605) 342-7822
Email: Ben.Patterson@usdoj.gov